**KEVIN C. DANIELSON, OSB #065860**
Acting United States Attorney
District of Oregon
**BENJAMIN T. HICKMAN, DCB #498167**
Assistant United States Attorney
Benjamin.Hickman@usdoj.gov
United States Attorney's Office
District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon 97204
Telephone: (503) 727-1000
    Attorneys for the United States

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **21st CENTURY CENTENNIAL INSURANCE COMPANY, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES OF AMERICA, et al.**, <br><br> Defendants. | Case No. 6:24-cv-00089-MTK <br> (Lead Case) <br> Case No. 6:24-cv-00092-MTK <br> (Trailing Case) <br> Case No. 6:24-cv-00203-MTK <br> (Trailing Case) <br> Case No. 6:24-cv-00554-MTK <br> (Trailing Case) <br> Case No. 6:24-cv-01152-MTK <br> (Trailing Case) <br><br><br> **DEFENDANT UNITED STATES' RESPONSE TO SECOND MOTION TO COMPEL DISCOVERY (ECF 181)** |

## Introduction

The discretionary-function exception and discovery in a Federal Tort Claims Act case are two sides of the same coin: In an FTCA case, to have authority to order discovery and to impose sanctions, a court must have subject-matter jurisdiction, "a threshold issue in the absence of which the court cannot proceed to hear other issues." *Blackburn v. United States*, 100 F.3d 1426, 1436 (9th Cir. 1996).

After the United States filed its motion to dismiss asserting the discretionary-function exception, but about a year before the United States' motion went under advisement, this Court allowed merits discovery against the U.S. Forest Service, on the premise that the Forest Service is a non-party, even though the only defendant in an FTCA action is the United States. ECF 121. Neither the Ninth Circuit nor any other court has endorsed that approach.

While the United States stands by its position that this Court lacks subject-matter jurisdiction, the United States will produce nonprivileged documents responsive to Boolean search terms that the non-United States parties provided, as the United States has said it will do for several months, even if the United States is dismissed from this case based on the discretionary-function exception. And while the United States stands by its position that EWEB abused the Court's decision to allow merits discovery, the United States will make the three Forest Service employees from the U.S. Department of Agriculture available for depositions even if the United States is dismissed.

**Argument**

**I.     The United States will produce nonprivileged documents responsive to the parties' search terms.**

Whether the United States will produce responsive documents is not in dispute. Only two disputes remain: first, whether the United States waived its objections for attorney–client privilege and work product because of its late objections; second, whether the United States should conduct a review narrower than the Boolean searches requested by the non-United States parties.

First, that the objections were untimely is irrelevant. On the Court's premise that the Forest Service is a non-party, the United States could have required the non-United States parties to seek the documents under the USDA's *Touhy* regulations, which govern requests for official information from that agency in non-party litigation. *See generally* 7 C.F.R. pt. 1, subpart K; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). The *Touhy* regulations would have allowed the USDA to decide the propriety of the requests in the first instance. *See* 7 C.F.R. §§ 1.213, 1.214. The United States elected not to so require. In any event, although untimely objections generally are waived, a court may excuse the waiver if it finds good cause, which could be the preservation of a privilege. *See Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005). The United States will provide a privilege log if it finds privileged material during its review of the documents. *See* Oct. 8 Hr'g Tr. 205:7–205:15.

Second, the parties agreed that the Forest Service would run the Boolean searches attached to the letter from the Adams plaintiffs' counsel dated June 9,

2025. ECF 182, Exh. R, pp. 3–9. Though EWEB believes that an agreement to refine the searches existed, the conferral record does not reflect such an agreement. It was the Adams plaintiffs' counsel, not EWEB's, who led the negotiations concerning the Boolean searches. *Id.* On July 15, after the government's counsel reported that the Forest Service had run the searches, the Adams plaintiffs' counsel asked if the remaining parties were comfortable moving forward:

> Ben[:]
>
> I can drop by a new small 2tb solid state hard drive that your IT people can format - so that it's definitely clean of any viruses, etc - and you can put a copy on that. I'll then take care of distributing all copies around to the non-BPA parties. If I agree to make this happen immediately upon receipt from Ben, will everyone agree to that process?
>
> Rick Klingbeil

ECF 182, Exh. V, pp. 10–11.

No one responded. A couple days later, July 17, the Adams plaintiffs' counsel followed up: "Having heard no objections from my side of the fence, I propose that I drop by a new, unopened solid state drive and we proceed from there. Please let me know immediately if you have an alternative suggestion." *Id.*, p. 10.

It wasn't until July 30 that EWEB's counsel spoke up, asserting that "[our] understanding was that [the government] would send a hit list so we could confer on that list to determine whether any refinements had to be made if, e.g., certain search terms prove to be obviously overinclusive." ECF 182, Exh. V, p. 4. Although EWEB's counsel believes that the parties had a prior conferral to that effect, *id.*, there is nothing in the record reflecting that such a conversation occurred. The non-

United States parties apparently did not have a common understanding among themselves, but no one disagreed when the Adams plaintiffs' counsel proposed that everyone proceed with the data responsive to the Boolean searches provided in the Adams plaintiffs' letter.

It's true, as EWEB points out, that the United States served its written responses and objections to the requests for production late. It's also true that the United States erred when it inadvertently neglected to inform the other parties that a separate group of documents exists in addition to the Fire Box. The former AUSA who was leading discovery for the government departed amid the search for Forest Service documents; as the conferral correspondence shows, the undersigned AUSA, now the only full-time AUSA on this case, did not become aware of the outstanding documents until the eve of a conferral call in late May 2025, and the AUSA acknowledged it on the call. *See* ECF 182, Exh. P.

After that call, the non-United States parties prepared the Boolean searches that they wanted the Forest Service to run. The undersigned AUSA agreed to ask the Forest Service to run those searches. *See, e.g.*, ECF 181, Exh. R, pp. 3–9.

Although the Forest Service experienced technical difficulties, the Forest Service anticipates finishing its work and sending a hard drive to the U.S. Attorney's Office in the coming days. *See* Decl. of Jason Lopez ¶¶ 6–7. The U.S. Attorney's Office will need some time to process the data for production, but the office will process it as quickly as possible.

## II. The United States will make the three Forest Service employees available for depositions.

A preliminary item: Several hours into the hearing on October 8, 2025, the Court asked the government's counsel whether the government would make the Forest Service witnesses available even if the United States were dismissed from the case, and the government's counsel suggested that it would not, at least if the case were to continue in state court. Tr. pp. 210–11. After the government shutdown ended, having had time to reflect on the stakes of this case for the public, the undersigned AUSA asked the Forest Service for its position, and the Forest Service said that it would make the witnesses available. This is consistent with the *Touhy* doctrine, which the government's counsel alluded to during the hearing, under which the agency has the first say about whether to make discovery available. *See id.* and 7 C.F.R. §§ 1.213, 1.214. The United States will make the witnesses available regardless of whether the United States remains a party to this case.

The United States does so without waiving its position on two fronts:

First, EWEB was not entirely clear about its intentions for the depositions. As the conferral record shows, in late May, EWEB and the United States "discussed that this group had tentatively agreed to the week of July 7 [for the depositions], but that we are willing to adjust that schedule so long as we don't go past mid-August." ECF 182, Exh. P. At that time, EWEB stated that it wanted to take a Rule 30(b)(6) deposition of the Forest Service in addition to the three individual depositions. *Id.* ("Our office will circulate 30(b)(6) topics soon."), Exh. O, pp. 1–2. But EWEB never provided Rule 30(b)(6) topics.

Second, after the conferral in late May, EWEB proceeded to examine one of Bonneville's Rule 30(b)(6) witnesses about topics that were clearly merits topics, in violation of the understanding that the Court and the parties had about the distinction between merits discovery and jurisdictional discovery. This is at issue in the briefing on the pending first motion to compel. *See* ECF 172 at 5, 12. The United States continues to believe that EWEB's actions with respect to both jurisdictional and merits depositions constitute an abuse of the Court's order.

### III. Preservation of Objections

Although the United States will cooperate with the discovery requests as outlined above, the United States must preserve its objections.

Under 28 U.S.C. § 2675, the United States is the only party to an FTCA action, a point to which all parties agreed at the October 8 hearing. Tr. pp. 11–12. The government's counsel has found no authority to endorse the Court's conception of the United States as subdivided parties and non-parties. The Ninth Circuit and every other court to consider the relationship between sovereign immunity and discovery has held that to allow improper discovery against the United States is to impinge on its sovereign immunity from litigation in the first place. *Blackburn,* 100 F.3d at 1436 (affirming district court's limitations on discovery because "the court cannot proceed to hear other issues" in the absence of subject-matter jurisdiction); *Freeman v. United States,* 556 F.3d 326, 342 (5th Cir. 2009) ("[A] party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion. … This

is particularly true where the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery."); *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1339 (11th Cir. 2007) (Immunity "not only insulates the party from liability, but also prevents the party from being exposed to discovery and/or trial."); *Sydnes v. United States, 523 F.3d 1179, 1186 (10th Cir. 2008)* ( "As we have said in the context of state sovereign immunity, 'immunity entitles a [sovereign] not only to protection from liability, but also from suit, including the burden of discovery.'") (*quoting Univ. of Texas v. Vratil,* 96 F.3d 1337, 1340 (10th Cir. 1996)); *Franklin Sav. Corp. v. United States,* 180 F.3d 1124, 1137–41 (10th Cir. 1999) (forbidding discovery into subjective intent and decision-making process).

Even on this Court's party/non-party premise, the Supreme Court has held that a court without subject-matter jurisdiction cannot enforce its discovery orders against non-parties:

> We hold that a nonparty witness can challenge the court's lack of subject-matter jurisdiction in defense of a civil contempt citation, notwithstanding the absence of a final judgment in the underlying action. Federal Rule of Civil Procedure 45 grants a district court the power to issue subpoenas as to witnesses and documents, but the subpoena power of a court cannot be more extensive than its jurisdiction. It follows that if a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void and an order of civil contempt based on refusal to honor it must be reversed.

*U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988).

Although the Court is deciding the discretionary-function exception at an early stage of the litigation, the Court's decisions on these discovery issues will be salient if the United States seeks review, be it now or after final judgment. Whether a court correctly concluded that discovery is within the scope of the discretionary-function exception is intertwined with whether a court understood the discretionary-function exception.

### Conclusion

As he explained in recent weeks, the government's counsel was not able to consult with internal government clients during the shutdown, so this filing is the first time that the parties are learning of the government's position in full. The United States recommends that the Court schedule a status conference to determine if the parties have been able to make progress on resolving these issues after this filing.

Alternatively, this Court should deny the motion to compel. The United States will fulfill its agreed-on obligations by producing nonprivileged documents responsive to the Boolean searches, even if the United States is dismissed from this case. The motion to compel the three Forest Service depositions is moot because the United States will make the Forest Service employees available, even if the United States is dismissed from this case.

Dated: November 19, 2025

KEVIN C. DANIELSON
Acting United States Attorney

*/s/ Benjamin T. Hickman*
BENJAMIN T. HICKMAN
Assistant U.S. Attorney

Attorneys for Defendant United States